IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

OPINION AND ORDER

Plaintiff,

13-cv-722-bbc

v.

JACOB STADFELD,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Jacob Stadfeld was charged with conspiring to distribute marijuana and convicted of the offense by a jury.  He has now filed a timely motion for post conviction relief under 28 U.S.C. § 2255, contending for a host of reasons that he was denied the effective assistance of counsel both at trial and on appeal.  None of these reasons survive his motion.  Some are matters he raised previously on direct appeal and is barred from raising again in a post conviction motion; the remainder are without legal merit.  Accordingly, his motion will be denied.

BACKGROUND

For at least four years, defendant Jacob Stadfeld and his codefendant Brent Delzer were members of a conspiracy distributing hundreds of kilograms of marijuana.  The conspiracy might never have come to the attention of law enforcement had it not been for

1

the disappearance of coconspirator Amos Mortier in November 2004.  The consequent investigation turned up evidence of Mortier's role as a major marijuana distributor in the Madison area, but little or nothing about his disappearance.  The Dane County District Attorney opened a John Doe investigative proceeding and subpoenaed Mortier's known drug associates to testify, including defendant and Delzer.  The two obtained counsel, who negotiated oral assurances with the district attorney that they would not be prosecuted by the state for their drug crimes if they spoke freely to the investigators about what they knew of Mortier.  Neither of the defendants nor their counsel ever considered the possibility that the agreement with the Dane County District Attorney might not extend to the federal government.  The district attorney honored the oral agreements and never prosecuted defendant or Delzer for their drug trafficking, but on August 28, 2008, a grand jury returned a federal indictment against them.

One  month later, the government filed an information notifying defendant of the government's intent to seek an increased penalty under 21 U.S.C. § 841(b)(1)(B), based on a 1995 felony drug conviction in state court for delivery of marijuana.  Two years later, defendant was found guilty of the conspiracy to distribute at least 100 kilograms of marijuana after a two-day jury trial.  In the interim, both defendants had moved to dismiss the indictment, contending that the federal government could not prosecute them, for three reasons: (1) defendants had entered into oral immunity agreements with state prosecutors; (2) the federal indictment was fatally tainted by the government's use of defendants' compelled immunized statements; and (3) even if defendants did not have actual immunity

from federal prosecution, they were entitled to a grant of equitable immunity from the court. Magistrate Judge Stephen L. Crocker held a three-day evidentiary hearing on the motion and later issued an extensive report, recommending denial of the motion to dismiss.  He found that neither defendant had been compelled to speak to the state actors; the state had not offered to immunize defendants from federal prosecution and it lacked the power to do so in any event; neither defendants' nor their lawyers' misunderstandings about the scope of the immunity agreement warranted a grant of equitable immunity to defendants; and both defendants had breached their immunity agreements with the state.  Rep. & Rec., dkt. #112 (08-cr-138-bbc) at 66.  The recommendation was adopted by the court.  Dkt. #139.

On January 5, 2010, the government moved to revoke defendant's release on conditions, averring that defendant devised and participated in a mail and wire fraud scheme, holding himself out as a music promoter.  At a hearing on the motion, the government adduced evidence that defendant had made promises to clients to promote their music or products that he did not fulfill, instead using the money from the clients for his personal use.  The magistrate judge ordered defendant detained.

Thereafter, defendant and Delzer obtained new counsel, who moved to suppress the statements defendants had made to state authorities.  Defendant argued that he was denied his Sixth Amendment right to effective assistance of counsel, which made his statements involuntary, and that it would be fundamentally unfair for the federal government to use against him statements he had been promised would never be used for that purpose.  Again, the magistrate judge recommended denial of the motions, finding that neither defendant

3

could show that his lawyer's poor performance had deprived him of some substantive or procedural right to which the law entitled him, because each defendant had breached the agreement "by omitting or lying about material information." Second Rep. & Rec., dkt. #187 (08-cr-138-bbc) at 7. This recommendation was also adopted by the court. Dkt. #212.

A week before the scheduled start of trial, Delzer entered into a plea agreement with the government and the case proceeded against defendant only. In addition to defendant's own statements, including those in which he admitted to Detective Sheil-Morgan his knowledge of the scope of the conspiracy, its sources of marijuana, the size of its monthly deliveries and its methods of operation, the government produced the testimony of two drivers and four coconspirators, including Delzer and Reed Rogala. Delzer and Rogala testified about the nature of the conspiracy, its membership, scope and operations. In addition, each testified that Amos Mortier had told him independently about his belief that defendant had staged a burglary of a large amount of marijuana he had purchased on credit from Mortier and for which Mortier was never paid. Trial tr., dkt. #272, at 2-P-52-55 (Delzer testimony); dkt. #268, at 1-P-107-108, 1-P-110-114 (Rogala testimony). Rogala also testified that after September 2003, he told Mortier that he was going to walk away from the conspiracy to enter law school the following spring. Id. at 1-P-107.

After a three–day trial, the jury found defendant guilty of the charged conspiracy and that the conspiracy had involved at least 100 kilograms of marijuana. (The latter finding qualified defendant for a mandatory minimum sentence of five years, which rose to ten years

because of the government's motion for an enhanced sentence under 21 U.S.C § 851.)
Defendant was sentenced on February 11, 2011 to a term of 144 months, below the advisory
guideline range of 168-210 months and above the ten-year mandatory minimum.  In addition
to the § 851 enhancement, defendant's sentence was enhanced by two points for obstructing
justice, both during the investigation of Mortier's disappearance and at the time of his
January 15, 2010 detention hearing in this case.

Defendant appealed, arguing that the district court had erred in four respects: (1)
failing to suppress the statements he made to the state investigators; (2) denying him an
opportunity to review the notes of the interviews that Detective Sheil-Morgan used for her
reports; (3) not permitting him to put in evidence regarding Mortier's disappearance as it
related to the motive of the government's witnesses to testify against defendant; and (4)
holding him responsible for the entire 2117 kilograms of marijuana distributed by the
conspiracy.  The court of appeals denied all four claims.  United States v. Stadfeld, 689 F.3d
705 (7th Cir. 2012).  Defendant did not file a petition for a writ of certiorari, so his
conviction became final on October 26, 2013, ninety days after the court of appeals issued
its decision.  He filed the present motion less than a year later, on October 16, 2013.


OPINION

Defendant raises a number of claims of constitutionally ineffective assistance of
counsel at either the trial level or the appellate level or both.  At least four of these were
decided by the court of appeals on defendant's direct appeal and cannot be reconsidered by

5

this court. <u>Varela v. United States</u>, 481 F.3d 932, 935 (7th Cir. 2007) ("A § 2255 motion is 'neither a recapitulation of nor a substitute for a direct appeal.'"). The remainder fail to state a claim.

### A. Claims Argued Previously on Direct Appeal

In this group are defendant's claims that (1) his Fifth and Sixth Amendment rights were violated when he was forced to choose between cooperating with the state investigation or participating in the John Doe proceeding; (2) appellate counsel failed to raise trial errors on appeal, including the court's failure to halt the trial to allow trial counsel to locate a witness; (3) the evidence did not support the jury's finding that he was responsible for more than 100 kilograms of marijuana; and (4) counsel did not appeal defendant's sentencing enhancements. The court of appeals rejected defendant's claim that his Fifth and Sixth Amendment rights were violated when he told law enforcement agents about his participation in the marijuana conspiracy, <u>Id</u>. at 709-13, as well as his claim that this court erred in denying his request to review Detective Sheil-Morgan's interview notes. <u>Id</u>. at 712. It follows from the latter ruling that it was permissible for this court to rely on Detective Sheil-Morgan's interview reports (without reviewing the underlying notes) in finding that defendant had lied to the state prosecutors when deciding whether defendant's sentence should be enhanced for obstruction. Accordingly, defendant is now barred from pursuing that issue as part of his post conviction motion. Finally, the court of appeals denied defendant's claim that the court had held him responsible for more marijuana than the government had proved could be attributed

6

to him.  Id. at 712-14.  These claims are not subject to reconsideration by this court.

B. New Claims

A second group of claims includes those never raised on direct appeal.  They fall into three groups.

1. Appellate counsel's failure to appeal alleged trial errors

Defendant contends that his appellate counsel was ineffective because he failed to raise the following trial errors on appeal: (1) the indictment was barred by the five-year statute of limitations; (2) the government did not introduce sufficient evidence to prove him guilty of the crime charged; (3) the trial court erred in allowing the government to introduce evidence about the search of Mortier's residence by his friends; (4) the court erred in denying him a continuance to locate a witness.  Under Strickland v. Washington, 466 U.S. 688 (1984), courts review the alleged ineffectiveness of counsel by considering first whether counsel performed in a deficient manner and second, whether counsel's errors prejudiced his client. Id. at 697.  In this case, however, the two inquiries collapse into one because there is no merit to the claims defendant thinks should have been raised on appeal.  Appellate counsel has no duty to raise meritless claims; to the contrary, counsel has an obligation to the court not to do so.

a. Statute of limitations

Defendant's contention that the indictment returned against him in August 2008 was barred by the statute of limitations rests on his theory that coconspirator Reed Rogala withdrew from the conspiracy in September 2003, bringing the conspiracy to an end at that time. This issue came up before trial because defendant wanted to bar any testimony about the allegedly staged burglary that took place in late November 2003. He argued that because Rogala had withdrawn from the conspiracy two months earlier, he could not testify as a coconspirator about statements that Mortier made to him about the supposed burglary in November 2004. This argument is foreclosed by the fact that the record does not support his assertion about when Rogala withdrew. The evidence showed that Rogala continued to act in furtherance of the conspiracy after September 2003, despite his statements then that he was going to withdraw and go to college. He came back to the Madison area at least two times in the following year: in the spring of 2004, he inspected a load of marijuana intended for Mortier and in November 2004, he collected debts left over from prior deliveries. In the light of this evidence, it was not plausible to find that Rogala had withdraw in September 2003. He was permitted to testify about his conversation with Mortier about defendant, as was Delzer.

In his present motion, defendant takes a different but equally unsuccessful argument about the statute of limitations. He argues that the indictment against him was barred by the statute of limitations because the conspiracy came to an end when Rogala withdrew from it more than five years before the indictment was returned. (18 U.S.C. § 3282 prohibits the

prosecution of any offense other than a capital offense unless the indictment has been returned within five years of the commission of the offense.)  Even if it were true that Rogala had withdrawn in September 2003 *and* that the conspiracy thereby came to an end (which it would not have, given the continuing involvement of the other conspirators), the indictment in this case was filed in August 2008, which was still less than five years after Rogala's supposed withdrawal.  Defendant's appellate counsel showed good judgment (and an ability to count) in not raising the issue on appeal.

b. Government's failure to prove elements of conspiracy

Defendant's second argument is that his appellate counsel should have argued on appeal that the government had failed to prove the elements of a conspiracy beyond a reasonable doubt.  The trial transcripts show the insubstantiality of this argument.  The jury heard a wealth of evidence in support of the charge that was more than sufficient to allow the jury to find defendant guilty beyond a reasonable doubt.

Defendant argues that the evidence supported only a buyer-seller relationship, but the jury heard the arguments in favor such a finding and rejected them, although the jury instructions reminded them that "just because the defendant may have bought marijuana from a member of the conspiracy charged in Count One does not automatically make the defendant a member of the conspiracy" and made the point that it could not find defendant guilty of the conspiracy unless it found that the charged conspiracy existed and that defendant knowingly became a member of it.

Defendant has failed to show that this one of the rare instances in which the court of appeals might be persuaded to overturn a jury verdict on the ground of insufficient evidence. The ample evidence supporting the jury's verdict would have deterred any sensible appellate counsel from arguing insufficiency of evidence on appeal.

c. Testimony about Mortier's house

Defendant alleges that certain evidence was improperly introduced at trial, although it is far from clear exactly what he is alleging. It seems to be that counsel should have argued on appeal that this court erred in allowing the government to elicit testimony from some of the witnesses about their going to Mortier's residence to clean it up before calling the police about his disappearance. The allegation is puzzling. Defendant has not cited any evidence in the trial transcript about persons going to the house to clean it up and his counsel argued on appeal that this court had erred in refusing to allow any evidence of Mortier's disappearance. Stadfeld, 632 F.3d at 712. Defendant may be thinking of the government's notice of intent to use the evidence against Delzer, dkt. #183 (08-cr-138-bbc), which was filed when Delzer was still going to trial, but not acted upon after Delzer entered a plea. At trial, Delzer was cross-examined about items he took from Mortier's house, but he did not testify to the dates on which he took them or why, other than for safekeeping, and he did not say that defendant knew he had done so.

In the absence of any indication that the allegedly improper evidence was part of the trial, there is no reason to consider defendant's contention that the court violated Fed. R.

Evid. 404(b)(1) by allowing the government to introduce evidence of a crime not charged in the indictment for the purpose of showing that he would have been more likely to have committed the crime of conspiracy to distribute marijuana.

d. Failure to grant continuance of trial

    Defendant's final argument is that the court deprived him of his rights when it denied his counsel's request to halt the trial to allow him to locate a witness.  All he says about this witness is that the witness would have testified that it was Delzer who owed money to Mortier, rather than the other way around, and that this evidence would have refuted evidence provided by other witnesses.  He does not explain why such testimony would not have been barred by the rule against hearsay, so it is unnecessary to consider it further.

2. <u>Sentence enhancements</u>

    Defendant's remaining objections relate to his claim that appellate counsel was ineffective because he did not challenge the court's enhancement of his sentence under § 851 and under U.S.S.G. § 3C1.1 for obstruction of justice.

a. Section 851 enhancement

    Defendant is convinced that he was never convicted of a prior felony drug offense, so it was error for the court to apply a § 851 enhancement.  Rather, he maintains, the conviction in state case no. 95-CF-13 was stayed pending successful completion of probation and later

11

discharged when he met those conditions.  Defendant is correct about the state court's initial withholding of judgment, but the presentence report shows that when he was convicted of a second charge of possession of marijuana the next year in case no. 96-CF-130, the court imposed the three-year probation sentence in 95-CF-13 it had withheld the year before. Presentence Rep., dkt. #240, ¶ 79.  Defendant adduced no evidence at trial to show the inaccuracy of the information in the presentence report.

Because the government filed the § 851 information before trial and defendant's prior felony drug conviction fulfilled the condition for increasing the penalty, defendant had no ground on which to contest the enhancement, either at trial or on appeal.  In those circumstances, neither his trial counsel nor his appellate counsel can be found ineffective for failing to contest his enhanced penalty.


b. Obstruction of justice enhancement

In addition to the enhancement of defendant's sentence under § 851, his sentence was enhanced for obstruction of justice.  He argues that this would not have been allowed had his counsel provided effective assistance, but the facts do not bear him out.

The government and the court records show that the evidence was more than sufficient to prove by the preponderance of the evidence that defendant lied to state agents about his participation in the conspiracy.  Defendant seems to think that the government was required to make this showing beyond a reasonable doubt but he is wrong.  The application of an enhancement to a sentence does not require proof beyond a reasonable doubt; it requires only

proof by a preponderance.  United States v. Anderson, 259 F.3d 853, 858 (7th Cir. 2001), unless the enhancement takes the sentence over the mandatory minimum sentence for the crime, Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013), or the statutory maximum for the offense.  United States v. Santiago, 495 F.3 820, 824 (7th Cir. 2007).  The obstruction enhancement applied to defendant's sentence did not affect either the mandatory minimum or the statutory maximum for his sentence.

Finally, defendant argues that when the court was deciding to enhance his sentence for obstruction, it should not have taken into consideration his perjury at his January 15, 2010 detention hearing before the magistrate judge.  In deciding to detain defendant, the magistrate judge found probable cause to believe that defendant had defrauded a number of people and had given inconsistent and implausible testimony about his actions.  Defendant says that the court should not have considered the perjury because it related to a different case.  However, defendant made the perjured statements during a hearing to determine whether he should be detained pending the trial in this case.  Therefore, it was proper to take them into consideration along with the other false testimony he gave during his trial.

Defendant argues that using the statements against him in this and in his other case constituted double jeopardy, but he offers no legal support for this argument, nor could he.  His sentence was enhanced in this case for the false statements he made at his detention hearing (along with the false statements he made at the trial in this case) and he was given a term of imprisonment in the new case for different false statements that he made to persons he had defrauded.

In summary, I conclude that defendant has failed to show that he had any plausible bases for contending that he had been denied the effective assistance of trial and appellate counsel.  Accordingly, his motion for post conviction relief will be denied.

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a defendant.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004).  This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).  In this case, defendant has not made the necessary showing, so no certificate will issue.  Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one.  Petitioner is free to seek a certificate of appealability from the court of appeals under Fed. R. App. P. 22, but that court will not consider his request unless he first files a notice of appeal in this court and pays the filing fee for the appeal or obtains leave to proceed in forma pauperis.

ORDER

IT IS ORDERED that defendant Jacob Stadfeld's motion for post conviction relief

under 28 U.S.C. § 2255 is DENIED.  No certificate of appealability shall issue.  Defendant

may seek a certificate from the court of appeals under Fed. R. App. P. 22, as explained above.

Entered this 8th day of April, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

15